**Dated: February 28, 2019**

**The following is ORDERED:**





Janice D. Loyd
U.S. Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re: ) | |
| ) | Case No. 18-14284-JDL |
| Juanita L. Grooms, ) | Ch. 13 |
| ) | |
| Debtor. ) | |

**ORDER REGARDING AUTOMATIC STAY
AND RESETTING HEARING**

**I. Introduction**

The issue before the Court is one of first impression: Is a 162 acre tract of real property to which record title has always been held by a limited liability company whose articles of organization have been canceled by the Oklahoma Secretary of State constitute "property of the estate" of the Chapter 13 debtor who is the sole member of the limited liability company? First State Bank of Duncan (the "Bank") which holds a first mortgage on the property, and who obtained a state court judgment in foreclosure, has moved to lift the automatic stay pursuant to 11 U.S.C. § 362(d)[1] in order to complete the foreclosure

_____

[1] All further references to "Code", "Section", and "§" are to the United States Bankruptcy Code, Title 11 U.S.C. § 101 *et seq.*, unless otherwise indicated.

proceedings by confirmation of the Sheriff's Sale of the property. The Bank is supported in the Motion by Dustin Hilliary ("Buyer") who purchased the subject property at Sheriff's Sale. Debtor opposes the Motion contending that the cancellation or extinction of the LLC makes the property part of her bankruptcy estate, and there is equity in the property above the Bank's mortgage which would inure to the benefit of her creditors.

Before the Court for consideration are: (1) the Bank's *Motion for Relief From the Automatic Stay, For Abandonment of Property* (the "Motion") [Doc. 30]; (2) the *Objection of Chapter 13 Trustee to Motion for Relief From Automatic Stay and For Abandonment* [Doc. 34]; (3) the Debtor's *Objection to Motion for Relief From the Automatic Stay and Order For Abandonment of Property* [Doc. 41]; (4) the Buyer's *Reply in Support of Motion for Relief From the Automatic Stay, For Abandonment of Property* [Doc. 59]; (5) the *Debtor's Response to Dustin Hilliary's Reply in Support of Motion For Relief* [Doc. 60]; (6) the Buyer's *Additional Briefing in Support of Motion for Relief From The Automatic Stay, For Abandonment of Property* [Doc. 70]; (7) the *Bank's Brief in Support of Motion to Lift Stay* [Doc. 71]; and *Debtor's Supplemental Brief* [Doc. 72]. Additionally for consideration by the Court is the record of the January 15, 2019, evidentiary hearing at which time the Debtor and a representative of the Bank testified, the parties introduced evidence and counsel presented oral argument. The below constitutes the Courts Findings of Fact and Conclusions of Law pursuant to Fed.R.Bankr.P. 7052 and 9014.[2]

## II. Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Order of Reference contained in Local Rule LCvR 81.4 for the

---

[2] All future references to "Rule" or "Rules" are to the Federal Rules of Bankruptcy Procedure, unless otherwise indicated.

2

United States District Court for the Western District of Oklahoma. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(G) (a motion to terminate, annul, or modify the automatic stay) over which the Court has authority to issue a final order or judgment.

### III. Background

1. The I Am LLC (hereinafter the "LLC") filed its Articles of Organization of an Oklahoma Limited Liability Company with the Oklahoma Secretary of State on October 18, 2004. [Hilliary Ex. 4, pg. 2][3]. The Secretary of State "terminated" the LLC's Articles on March 14, 2006, and "canceled" its right to do business on July 1, 2010. [Hilliary Ex. 4, pg. 1]. A Certificate of the Office of the Secretary of State of Oklahoma executed on January 7, 2019, reflects that "*I Further Certify that THE I AM LLC, filed Cancelled in the Office of the Secretary of State on the 1st day of July, 2010, and is no longer an existing Domestic Limited Liability Company, according to our records to the date of this certificate.*" [Debtor Ex.1]. The LLC had been canceled as of the time of the filing of Debtor's bankruptcy and has not been reinstated since.

2. On February 13, 2006, the LLC executed a Promissory Note in the amount of $300,000 in favor of the Bank. [Bank Ex. 3]. The Debtor (in her maiden name) signed the Promissory Note in her capacity as Manager of the LLC. At the same time, the Debtor executed a written personal Guaranty Agreement of the Promissory Note. [Bank Ex. 8].

3. The Promissory Note was secured by a Real Estate Mortgage With Power of Sale executed on February 13, 2006, which was filed of record in the Office of the County Clerk of Comanche County on February 22, 2006, in Book 4935 at Page 156-157. [Bank

---

[3] The Exhibits referred to in this Opinion/Order are those admitted into evidence at the evidentiary hearing on the Bank's *Motion to Lift Automatic Stay* conducted by the Court on January 15, 2019, and constitute part of the record in this case.

Ex. 3]. The Promissory Note, Mortgage and Guaranty Agreement were extended several times, with the last Promissory Note executed on March 13, 2015, in the principal amount of $238,792.85 with a maturity date of March 18, 2018. [Bank Ex. 2].

4. The property was conveyed by Warranty Deed to the LLC on February 15, 2006, and was filed in the Office of the County Clerk of Comanche County on February 22, 2006, in book 4935 at page 155. [Bank Ex.1].

5. The LLC defaulted on the Promissory Note and Mortgage, and the Bank commenced foreclosure proceedings against the LLC and the Debtor as Guarantor. On July 10, 2018, the District Court of Comanche County, Oklahoma, entered its *Partial Journal Entry of Judgment,* entering an *in personam* and an *in rem* judgment against the defendant LLC only, in the amount of $228,948.08, with interest and costs accruing thereon. The Judgment further provided for the foreclosure of the Bank's mortgage on the property. [Bank Ex. 10; Hilliary Ex. 2].

6. In the foreclosure proceeding, the Sheriff had the property appraised at $243,000.00. [Hilliary Ex. 2, pg. 4]. The Buyer purchased the property at Sheriff's Sale on September 5, 2018, for $265,000.00 as a credit on the judgment entered in favor of the Bank. [Hilliary Ex. 2, pg. 5; Bank Ex. 11]. Before the State Court could hear the Bank's Motion to Confirm Sale, on October 12, 2018, the Debtor filed her Chapter 13 voluntary petition for relief. [Doc.1].

7. The Debtor's Schedules listed the value of the property at "Unknown", although she indicates a realtor has recommended listing the property at $550,000.00. [Doc.14, pg. 6, ¶ 1.4]. The Debtor testified at the evidentiary hearing that she had a real estate sales

4

contract for the property for the purchase price of $405,000.00. [Debtor's Exhibit 5].[4] Debtor's Amended Chapter 13 Plan proposes the sale of the property with the proceeds to pay the Bank in full at closing, with the remaining proceeds to be turned over to the Chapter 13 Trustee. [Doc. 62].

## IV. The Issues Before the Court

The Motion for Relief from Stay encompasses the normal issues for such a motion, i.e. the Movant establishing the absence of equity in the property, and the Debtor establishing that the property is necessary for successful reorganization. That, however, is not the unique and initial question which has to be reached by the Court. That issue is whether the subject real property is "property of the estate" under § 541(a) so that the automatic stay attaches to it. That issue, in turn, is dependent upon whether the property is deemed owned by the LLC, whose certificate to do business was canceled by the Oklahoma Secretary of State in 2010, or whether such cancellation results in the property being owned by the LLC's sole member, Debtor Grooms.

The Debtor argues that the "cancellation" of the LLC's Articles terminated the existence of the LLC so that the subject property reverted to the Debtor and therefore constitutes "property of the estate" subject to the automatic stay. Conversely, the Bank and Hilliary argue that the "cancellation" of the LLC's Articles of Organization only bars the LLC from the capacity to sue or be sued, that the only "property of the estate" is the Debtor's membership interest in the LLC, and that the property does not become an asset

---

[4] As noted by the Court at the time of the evidentiary hearing, there are several problems with the proffered Real Estate Sales Contract, not the least of which is that by its terms the contract automatically terminated on December 17, 2018, three days prior to its execution date of December 20, 2018. [Debtor's Exhibit 5, ¶ 19]. Additionally, if the property titled in the name of the canceled LLC is really property of the bankruptcy estate as contended by Debtor, the Real Estate Contract was executed post-petition without court approval as required by § 363(b).

5

of the estate merely because of the action of the Secretary of State.

## V. Discussion

### A. The Automatic Stay and Whether the Property is Property Of the Estate

Section 362(a)(3) provides with certain exceptions, that the filing of a bankruptcy petition operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate". Section 541(a)(1) defines "property of the estate" as "all legal and equitable interest *of the debtor* in property as of the commencement of the case." (Emphasis added). It is clear that the automatic stay does not stay actions against property that is not property of the estate. *In re Moore,* 410 B.R. 439, 441 (Bankr. E.D. Va. 2009). It appears equally clear that the automatic stay protects the debtor, the debtor's property and property of the estate, but it does not protect non-debtor parties, including non-debtor insiders or their property. See *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC*, 491 B.R. 27, 35-36 (S.D. N.Y. 2013).

It is well established that defining "property of the [bankruptcy] estate" under § 541(a) is a question of federal law, but the nature and extent of the debtor's interest in property as of the petition date, is determined by applicable state law. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914 (1979); *Bailey v. Big Sky Motors, Ltd. (In re Ogden)*, 314 F.3d 1190, 1197 (10th Cir. 2002) ("For purposes of most bankruptcy proceedings, property interests are created and defined by state law."). Therefore we must determine the nature of Debtor's interest in the LLC under Oklahoma law as of the date of the filing of the bankruptcy.

The Oklahoma Limited Liability Company Act (the "LLC Act") 18 O.S. § 2000 *et seq*.,

governs the formation, operation, dissolution, and cancellation of Oklahoma limited liability companies. *In re Midpoint Development, L.L.C.,* 466 F.3d 1201, 1204 (10th Cir. 2006); *In re White*, 556 B.R. 489, 494 (Bankr. N.D. Okla. 2016); *Vista Exploration Co. v. Mewbourne Oil Co.*, 2010 WL 1980196 (W.D. Okla. 2010). As a general rule, a limited liability company is a legal entity distinct from its members, and the assets and liabilities of the limited liability company are separate from the assets and liabilities of its members. 18 O.S. § 2032 ("A capital interest is personal property. A member has no interest in specific limited liability company property."). Rather than owning an interest in the assets of the limited liability company, a member holds a capital interest in the limited liability company. A member of a limited liability company "has no right to demand and receive any distribution from a limited liability company in any form other than cash" and cannot be "compelled to accept ... a distribution of any asset in kind... ." 18 O.S. § 2028. In short, a member's bankruptcy estate has no interest in property of a limited liability company, and the estate's property interest is limited to the member's capital or distributional interest.

Once its articles become effective, the limited liability company becomes a separate legal entity, "the existence of which as a separate legal entity *continues until cancellation of the limited liability company's articles of organization* and completion of its winding up, if any." 18 O.S. § 2004(B)(1) (emphasis added); *White,* 556 B.R. at 494. Under Oklahoma law, as well as under the laws of virtually every state, when a limited liability company or corporation is administratively dissolved, it is prohibited from carrying on any business other than that necessary to wind up its affairs.

There are several other sections of the LLC Act which must be considered in determining whether the LLC legally ceased to exist or whether it continued to constitute

a separate legal entity as of the petition date.

    Title 18 O.S. § 2012.1 provides as follows:

> A. The articles of organization shall be canceled upon the dissolution and the completion of winding up of a limited liability company, or as provided in subsection B of this section, or upon the filing of a certificate of merger or consolidation if the limited liability company is not the surviving or resulting entity in a merger or consolidation....
>
> B. The articles of organization of a domestic limited liability company shall be deemed to be canceled if the domestic limited liability company fails to file the annual certificate and pay the annual fee provided in Section 2055.2 of this title or pay the registered agent fee to the Secretary of State due under Section 2055 of this title within three (3) years from the date the certificate or fee is due, the cancellation to be effective on the third anniversary of the due date.

Title 18 O.S. § 2037 entitled "Dissolution" provides that a limited liability company is dissolved upon the earlier of: (1) The occurrence of the latest date on which the limited liability company is to dissolve set forth in the articles of organization; (2) The occurrence of events specified in writing in the operating agreement; (3) The written consent of all the members...; (4) At any time there are no members; provided, that the limited liability company is not dissolved and is not required to be wound up if...; and (5) Entry of a decree of judicial dissolution under Section 2038 of this title.

    Subsection B of § 2037 provides: "A limited liability company *continues in existence* after dissolution, regardless of whether articles of dissolution are filed, but may carry on only activities necessary to wind up its business or affairs and liquidate its assets under Sections 2039 and 2040 of this title." (Emphasis added).

    There is nothing in the record indicating that any of the five (5) events under § 2037 giving rise to "dissolution" have occurred in the present case. What did occur was the

8

"cancellation" of the LLC's Articles of Organization by the Secretary of State, apparently for failure to pay franchise taxes and fees. Does this "cancellation" action by the Secretary of State also constitute "dissolution" of the LLC? Debtor appears to argue that it does.

Debtor cites 18 O.S. § 2004(B)(1) for the proposition that it "provides that a limited liability company formed under this act is a separate legal entity, the existence of which is a separate legal entity continues until cancellation." [Doc 41, pg. 2-3]. Section 2004(B)(1), entitled "Filing the Articles of Organization" provides, in pertinent part:

> When the articles of organization become effective, the proposed organization becomes a limited liability company under the name and subject to the purposes, conditions, and provisions stated in the articles. A limited liability company formed under the Oklahoma Limited Liability Company Act is a separate legal entity, the existence of which as a separate legal entity continues until *cancellation of the limited liability company's articles of organization and completion of its winding up, if any.* (Emphasis added).

It appears to the Court that the emphasized language from § 2004(B)(1) provides that a limited liability company have continued legal existence until two events both occur i.e., (1) cancellation of the limited liability company's articles of organization *and* (2) completion of its winding up-if any. It is clear from the record that there was no "winding up" of the LLC, however, Debtor argues that the "cancellation" of the Articles by itself was sufficient to end the LLC's legal existence. What does the case law say about "cancellation" versus "dissolution" and the legal existence of the LLC?

Debtor relies upon the case of *Holliman v. Midpoint Development, L.L.C. (In re Midpoint Development, L.L.C.)*, 466 F.3d 1201 (10th Cir. 2006).[5] In *Midpoint,* the Tenth

---

[5] This Court is familiar with the decision from having been presented with the issue as to whether a limited liability company which had been suspended by the Secretary of State had standing to file an involuntary bankruptcy. *In re Agrawal,* 2017 WL 4913715 (Bankr. W.D. Okla. 2017).

9

Circuit held that a limited liability company which had filed *articles of dissolution* prior to filing bankruptcy legally failed to exist and could not file bankruptcy.

The Bank and Hilliary argue that *Midpoint* is distinguishable from the present case in that in *Midpoint* the limited liability company had already initiated voluntary dissolution proceedings before bankruptcy. Here, they argue, there has been no dissolution proceedings, only the act of "cancellation" by the Secretary of State. Debtor points out that the Court in *Midpoint* used the terms "cancellation" and "dissolution" interchangeably. Debtor appears to be correct in this evaluation, as *Midpoin*t 466 F.3d at 1204 states as follows:

> An Oklahoma L.L.C. comes into legal existence with the filing of executed articles of organization with the Office of the Secretary of State. 18 O.S. § 2004(A) and (B). Section 2007, in relevant part, provides: "upon the effective date of articles of dissolution or a decree of judicial dissolution, the articles of organization are canceled." 18 OS § 2007(B). Although not explicitly stated, it is reasonable to conclude that an *L.L.C. ceases to exist when its articles of organization are cancelled*. We agree with the district court's conclusion that "these two provisions, taken together, suggest that the legal existence of an Oklahoma limited liability company ceases to exist upon the effective date of articles of dissolution or a decree of judicial dissolution." (Emphasis added).

None of the parties make reference to any cases addressing *Midpoint's* conflating "cancellation" and "dissolution". One case which does is *AT&T Advertising, LP v. Winningham*, 2012 OK CIV APP 51, 280 P.3d 360. There, the Oklahoma Court of Civil Appeals held that an LLC which was canceled by the Secretary of State before signing a contract did not have legal existence and thus personal liability was imposed upon the member executing the contract. In addressing the impact of *Midpoint* the court stated the following:

Under the Act, articles of organization are essential to LLC's formation and existence as a separate legal entity. 18 O.S. Supp.2004 § 2001 and § 2004. The Act provides for cancellation of the articles of organization in § 2012.1. Cancellation may occur either by the LLC filing notice of dissolution or by the LLC being deemed cancelled for failing to file the annual certificate or failing to pay the annual fee within three years of the due date. Section 2055.2, on which Winningham relies, includes express language distinguishing a canceled LLC from one not in good standing. Winningham's argument on liability would be correct in the case of an LLC which has "ceased to be in good standing" under the Act. However, once three years have passed from the due date for the fee or certificate, the Act plainly provides for a more serious penalty. That date triggers cancellation of the LLC. Indeed, following cancellation, filing the annual certificate is no longer required. 18 O.S. Supp.2004 § 2055.2(B). *This indicates the Legislature's intent that cancellation means the LLC no longer exists.*

Indeed, the Tenth Circuit Court of Appeals recognized that "(a)lthough not explicitly stated, it is reasonable to conclude that an L.L.C. *ceases to exist* when its articles of organization are canceled." *In re Midpoint Development*, *supra,* 466 F.3d at 1204 (emphasis added). *Accord, Chadwick Farms Owners Ass'n v. FHC LLC*,166 Wash.2d 178, 207 P.3d 1251 (Wash. 2009). As noted in *Midpoint*, the Act provides "(a) limited liability company formed under this act is a separate legal entity, the existence of which as a separate legal entity continues until cancellation of the limited liability company's articles of organization." 18 O.S. Supp.2004 § 2004(B)(1). Winningham contends *Midpoint* is not relevant because that case involved an LLC which itself filed articles of *dissolution*, rather than being *canceled* by the Secretary of State for failure to comply with the statute. *However, the Act shows that dissolution (voluntary) and cancellation (involuntary) have the same result: the LLC ceases to exist. We are not persuaded that distinction matters. We agree with the Tenth Circuit Court of Appeals' interpretation of the Act: once cancelled, an LLC is no longer a separate legal entity.* The record does not show any dispute that (the LLC) was cancelled as an LLC during the time all of the contracts at issue in this case were executed. Accordingly, the liability shield afforded to members of LLCs was not in effect when the contracts were executed. (Emphasis added.).

In *In re White*, 556 B.R. 489 (Bankr. N.D. Okla. 2016), Judge Michael was presented with the question of whether an LLC had standing to file an adversary proceeding at a time when its articles of organization as an Oklahoma limited liability company had been canceled. In granting summary judgment dismissing the bankruptcy, Judge Michael held that under Oklahoma law, cancellation of a creditor's articles of organization for failure to file its annual certificates and pay required fees meant that it had ceased to exist as a separate legal entity that could sue or be sued in the courts of Oklahoma. The Court stated at page 495 of its opinion:

> Several events can result in the articles of organization of an LLC being canceled. Relevant to this case, when an LLC has failed to file its annual certificate and pay the annual fee for three years from the due date, the articles of organization of the LLC "shall be deemed to be canceled." Such cancellation is effective on the third anniversary of the due date. *The consequences of cancellation is that the LLC ceases to exist*. Once the articles of organization of an LLC have been canceled, it may apply for reinstatement in the same manner as if it were not in good standing, i.e., by filing an application along with the delinquent certificates and fees."( Emphasis added).

In *White* the Debtor relied upon the *AT&T Advertising* case in support of its position that the canceled creditor could not file the adversary. While recognizing that *AT&T Advertising* was distinguishable in that it involved an issue of reinstatement of the LLC not involved in *White,* Judge Michael reaffirmed its holding insofar as the effect of cancellation:

> The Court agrees that any statements made by the court in *AT&T Advertising* regarding the *effect of reinstatement of an LLC's articles*, as opposed to conversion of the LLC to a corporation, should be regarded as dicta. That does not, however, change this Court's reading of *AT&T Advertising* regarding the *effect of cancellation of an LLC's articles of organization. Those conclusions, which hold that an LLC ceases to exist when its articles of organization are canceled, remain good law.* (Emphasis the Courts).

12

556 B.R. at 497.

While the cases cited above hold that the LLC no longer has a legal existence after cancellation, at least in the context of being able to bring suit or otherwise seek relief in the bankruptcy court, there appear to be no Oklahoma cases holding that upon cancellation of the articles of organization the assets of the LLC revert to the members. However, the Court found one case from the State of Washington that holds that the assets of a canceled LLC do pass to the members. In *Sherron Associates Loan Fund V (Mars Hotel) LLC v. Saucier,* 237 P.3d 338, 363-64 (Wash. App. Div. 2010) the court stated as follows:

> When a corporation ceases to exist, ownership of its assets passes to the shareholders once the creditors have been paid. (Citations omitted). A similar rule applies to partnerships. In the absence of a governing statute, partnership assets are owned by the partners once the creditors have been satisfied. (Citations omitted). We believe the rule for limited liability companies, a hybrid of partnerships and corporations, should be the same. In the absence of a governing statute, title to LLC-owned property passes to the owner of the canceled LLC subject to creditor claims
>
> Mr. Saucier argues that there is a governing statute, pointing out RCW 25.15.245(1), which states in part: "A member has no interest in specific limited liability company property." We do not agree that provision is applicable to a canceled LLC. It merely states a general rule governing an ongoing LLC. Somewhat closer to being on point is RCW 25.15.300(1)(c), which requires assets to be distributed during dissolution in proportion to a member's distribution shares unless an agreement provides otherwise.
>
> Neither of these provisions, nor any other, involves nondistributed assets. The original 1994 legislation appears to have anticipated that an LLC would go through the dissolution process and wind up its affairs by paying liabilities and distributing assets prior to cancelling its certificate of formation. However, (the LLC here) did not go through that process. There is no statute addressing a canceled LLC that was not first dissolved. Accordingly, the rule governing undistributed partnership and corporate assets also should

13

>apply to LLCs.
>
>Just as the assets and liabilities of a natural person pass to his or her estate upon death, we believe the assets and liabilities of a dead LLC passed to its owners. We find no authority that suggests assets die with the LLC. If the asset in question in this case had been the hotel rather than a judgment, we doubt that anyone would believe the hotel had become unowned merely because of the death of its owner.

At the time of the evidentiary hearing of January 15, 2019, the Court advised the parties of the *Sherron Associates* case quoted above and invited the submission of further briefs as to whether there was additional authority, either for or against, the proposition that cancellation of a limited liability company's articles of organization resulted in reversion of its assets to the limited liability company's members. No such case authority has been provided to the Court.

Purchaser Hilliary attempts to strengthen its argument that the LLC continues to exist as a separate entity by considering a penumbra of Oklahoma statutes. In addition to the statutes the Court has discussed and quoted above, Hilliary points to the following:

1. Title 18 O.S. § 2019(B). Section 2019 entitled "Managers as Agents" authorizes a member of the limited liability company to execute documents on behalf of the limited liability company, including documents providing for the acquisition, mortgage, or disposition of real or personal property. Section 2019 does not contain, as stated by Hilliary in its Brief [Doc. 70 pg. 3], any provision that makes the execution of such documents binding on the LLC notwithstanding "the failure of the LLC to file its annual certificate of pay the annual fee *shall not* impair the validity of such deed." (Emphasis Hilliary's original.).

2. Title 18 O.S. § 2028(1). This Section entitled "Form of Distribution-Asset in Kind"

14

provides that a member has no right to demand or receive any distribution from a limited liability company in any form other than cash. This Section is consistent with § 2032 which provides that a member's capital interest in a limited liability company is personal property, and a member has no interest in specific limited liability company property.

It is arguable that in single-member limited liability company, such as here, upon cancellation or dissolution the member need not be prohibited from taking the limited liability company's interests in kind. The problem with this argument is that upon dissolution and winding up (as opposed to cancellation by administrative action) distribution must first be made to the limited liability company's creditors before there would be any right for the asset to pass to the member. 18 O.S. § 2040(A)(1). To allow reversion of the asset to the member, as argued here by the Debtor, would appear to be inconsistent with the policy expressed by § 2040. This rationale was recognized by the Idaho bankruptcy court in *In re Aldape Telford Glazier, Inc.,* 410 B.R. 60 (Bankr. D. Idaho 2009), in which the court was presented with the reverse of the situation here, i.e. there a corporate holding company d.b.a. a limited liability company that it owned sought to file bankruptcy. The bankruptcy court dismissed the case, holding that prior to the limited liability company's dissolution and winding up with distribution to its creditors including the limited liability company as an asset of the holding company constituted an impermissible "joint petition" with the corporate holding company. The Court noted as follows:

> There is no provision in the Idaho Code indicating that upon dissolution, LLC property automatically reverts to the LLC members. To the contrary, (Idaho statutory citation omitted) provides that LLC property belongs to the LLC, not the individual members. A dissolution does not negate this provision or otherwise effect a transfer of LLC assets to the individual members. Rather, a dissolution triggers the winding-up process. Ultimately, members of dissolved LLC's acquire

15

> LLC property as their own if (and only if) assets are distributed to them upon the winding up, in accordance with the priority scheme laid out (in the statute). Consequently, this Court's holding that LLC members cannot treat assets of a dissolved LLC as their own prior to such a distribution is inconsistent with the governing Idaho statutory provisions."

410 B.R. at 65, n. 9; *Cf. Mid-American Elev. Co., Inc., v. Norcon, Inc.,* 679 N.E.2d 387, 392 (Ill. 1996) (shareholders may not treat corporate assets as their own prior to completion of the winding up process).

In *In re Kane*, 2011 WL 2119015 (Bankr. D. Mass. 2011), the individual debtors claimed as exempt homestead property although the property was titled in the name of their limited liability company. Prior to bankruptcy the limited liability company had been administratively dissolved by the Secretary of the Commonwealth. The issue presented to the court was whether the real property titled in the name of the limited liability company was property of the estate. If it was not property of the estate, it could not be claimed as exempt. The court found that the administrative cancellation of the limited liability company's articles did not terminate the existence of the limited liability company or effectuate a transfer of the property to the debtors. The limited liability company continued to exist, and the debtors, as sole members and managers of the limited liability company, were charged with winding up its affairs, which they had not done. In finding that the limited liability company property was not property of the estate the, the court stated as follows:

> Given the existence of the bank account in the name of the LLC and a mortgage granted by the LLC to the (Bank), for which the Debtors may or may not be personally liable as guarantors, a mortgage which encumbers the Property, the Court finds that the Debtors' argument that the Property has reverted to them by operation of law, without the execution of a deed from the LLC to them, is without foundation in fact or in law.

16

As recited above, and apparently agreed to by all the parties, there is no Oklahoma case law directly on point. In the absence of such authority, this Court has three alternatives. First, In the absence of controlling authority, the Court, if it so chooses, may undertake its own analysis in an effort to predict how the Oklahoma Supreme Court would resolve the issue. *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1574 (10th Cir. 1984); *MindGames, Inc. v. Western Publishing Co., Inc.,* 218 F.3d 652, 655-56 (7th Cir. 2000); *In re Midsouth Golf, LLC*, 549 B.R. 156, 174 (Bankr. E.D. N.C. 2016). Second, it may certify the question of state law to the Oklahoma Supreme Court *sua sponte* pursuant to the Oklahoma Uniform Certification of Questions of Law Act, 20 O.S. § 1601 et seq.; *State Farm Mutual Automobile Insurance Co., v. Fisher*, 609 F.3d 1051, 1058-59 (10th Cir. 2010); *In re Van Winkle*, 583 B.R. 759, 767-68 (10th Cir. BAP 2018) ("Whether to certify a question of state law to the state supreme court is within the discretion of the federal court."). Third, and this is not necessarily exclusive of the second alternative, in the case of a question concerning application of the automatic stay the court may engage in the so-called "arguable theory" and, at least temporarily, keep the stay in effect.

**B. The Stay Applies When There is a Bona Fide Dispute As to Whether Property is Property of the Estate**

There has developed a doctrine that the stay should continue to apply when the ownership of the estate property is in *bona fide* dispute. As stated in *In re Franco*, 574 B.R. 730, 735 (Bankr. D. N.M. 2017):

> The automatic stay applies to estate property, and does not apply to non-estate property. What about property that may, or may not, be owned by the estate? One line of cases holds that the automatic stay applies if the subject property is "arguably" estate property. *See, e.g., Brown v. Chestnut (In re Chestnut),* 422 F.3d 298, 303-04 (5th Cir. 2005); *In re Levenstein,* 371 B.R. 45, 48 (Bankr. S.D. N.Y. 2007)

>(adopting the "arguable property" concept); *Taub v. Taub (In re Taub)*, 427 B.R. 208, 221 (Bankr. E.D.N.Y. 2010); *aff'd,* 2011 WL 1322390 (E.D. N.Y. 2011) (additional citations omitted)
>
>As stated in *In re Pickle*, 487 B.R. 289 (Bankr. D. N.M. 2013), the "arguable property" standard may be too loose. However, where the estate's ownership of property is in *bona fide* dispute, it is reasonable to hold that the stay applies, pending resolution of the dispute. 487 B.R. at 294-95. \*\*\*

There is no doubt in the opinion of the Court that there is a bona fide dispute about whether or not the property is property of the estate to which the stay applies, although it appears, without deciding, that the Bank and Hilliary have perhaps the stronger argument that it is not. Nevertheless, it is a close call. In such circumstances should the court determine that there is no stay in effect there would be no recovery to any creditor other than the Bank. On the other hand, if the Debtor is given some time by way of imposition of the stay to complete the proposed sale of the property not only will the Bank be paid in full but there will also be a substantial dividend to the creditors. On February 14, 2019, the Debtor filed a Motion to Sell seeking court approval to sell the property for $405,000 pursuant to a Contract dated January 21, 2019, and without a stated termination date. [Doc. 73]. A hearing on the Motion to Sell is set for March 12, 2019.

As it stated from the bench at the conclusion of the evidentiary hearing, the Court had considerable misgivings as to whether the Debtor could really close the proposed sale within a reasonable amount of time and without prejudice to the Bank or the Buyer. Unfortunately, the Debtor's testimony indicated she had little specific knowledge concerning details of the possible sale or an understanding of the obvious title issues. The recent filing of the Motion to Sell and its forthcoming hearing date gives the Court reason to be more optimistic that the sale is a realistic possibility, and affording the Debtor a relatively short period of time, at least

18

until at or after the March 12th hearing date, would be in the best interests of the creditors (including the Bank) and the bankruptcy estate. Accordingly, the Court finds and

**IT IS ORDERED** that after consideration of the parties' supplemental briefs, the conclusion of the final hearing is continued to be heard following the hearing on Debtor's Motion to Sell set for the **12th day of March, 2019, at 2:00 P.M.**,[6] and that the automatic stay imposed by § 362(a) of the Bankruptcy Code does apply to the property here at issue and is to continue in full force and effect prohibiting the First Bank & Trust Co. from continuing its proceedings in the District Court of Comanche County, Oklahoma, pending the conclusion of the final hearing on the Bank's Motion to Lift Stay.

# # #

---

[6] Although the Motion to Sell was originally noticed to be heard March 12, 2019, at 8:30 A.M., the Court is by this order rescheduling it to be heard on the 2:00 p.m. docket along with the continued final hearing on Bank's Motion to Lift Stay.